944 F.2d 910
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eric Bernard DUNNICK, Defendant-Appellant.
 No. 90-50605.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1991.
Decided Sept. 19, 1991.
 
 Before POOLE, KOZINSKI and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eric Dunnick appeals the district court's interlocutory order denying his motion to dismiss his indictment based on double jeopardy grounds. Dunnick was indicted for assault on a federal officer in violation of 18 U.S.C. §§ 111 and 1114 (count 1) and importing a stolen vehicle in violation of 18 U.S.C. § 553(a)(1) and (2) (count 2). He contends that the indictment was barred by double jeopardy because the United States Customs Service assessed civil penalties for the same crimes and because the civil penalties were punitive in nature. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 BACKGROUND
 
 3
 On May 27, 1990, Eric Bernard Dunnick was arrested for and eventually charged by a superseding indictment on August 8, 1990 with assault on a federal officer, in violation of 18 U.S.C. §§ 111 and 1114 and with importation of a stolen vehicle, in violation of § 18 U.S.C. 553(a)(1) and (2). On June 5, 1990, the United States Customs Service sent Dunnick a notice of penalty in two cases. 90250120453 and 90250120454, demanding payments of penalties of $10,000 and $5,000 to be paid within 30 days. The basis for the $10,000 penalty was that Dunnick had attempted the importation of a stolen car, in violation of 19 U.S.C. § 1627(1)(A). The basis for the $5,000 penalty was that Dunnick failed to complete inspection by United States Customs at the Port of Entry at San Ysidro, California before proceeding inland, in violation of 19 U.S.C. § 1433.
 
 
 4
 The underlying facts in this case are disputed. The government's factual allegations are based on a complaint filed by Special Customs Agent Victor Sanchez and are as follows:
 
 
 5
 On May 27, 1990, Eric Bernard Dunnick and another male passenger presented themselves for inspection at the San Ysidro Port of Entry. Appellant was the driver of a stolen 1988 Maroon Nissan Pathfinder.
 
 
 6
 Dunnick and the male passenger told United States Immigration Inspector R.C. Palen that they were both United States Citizens and had nothing to declare. Inspector Palen told Dunnick that she was going to escort him to secondary inspection for further examination.
 
 
 7
 Upon hearing this, Dunnick immediately accelerated the Pathfinder out of primary, headed north into the United States and took the first exit off Interstate 5 which was San Ysidro Boulevard. United States Customs Officer gave chase in a marked United States Customs Vehicle. Dunnick slowed his car as he encountered traffic on the San Ysidro Boulevard Exit. Inspector Rashid brought his customs vehicle to a stop approximately twenty feet behind the Nissan Pathfinder. Dunnick slammed on his brakes and put the car into reverse. He slammed into the right front end of the Customs vehicle. Dunnick and his passenger immediately jumped out of the Pathfinder and ran from the car in an attempt to escape.
 
 
 8
 United States Customs Inspector J. Savage, also driving a marked Customs vehicle, witnessed all of this. Chula Vista Police Officer Miranda saw two males running from what he believed to be a car accident. He caught appellant after a short foot chase.
 
 
 9
 Although Dunnick now disputes many of these facts, they formed the basis of the complaint upon which the court based its rejection of the jeopardy claim. The ultimate resolution of factual disputes is for the court at trial.
 
 
 10
 On August 1, 1990, Dunnick requested that the Customs Service mitigate the civil penalties. That request was denied by the Customs Service on August 8, 1990. However, the Customs Service granted Dunnick an opportunity to file a new petition at the conclusion of his criminal trial.
 
 
 11
 On August 13, 1990, the district court set a trial date of September 18, 1990 with a pretrial motions date of September 10, 1990. On August 27, 1990, Dunnick paid $500 toward the civil penalties and, based on that payment, filed a motion to dismiss the indictment due to double jeopardy. Dunnick argued that the penalties were assessed against him for the same conduct as charged in the superseding indictment and that his agreement to pay penalties, and his partial payment of $500 precluded any further criminal prosecution. Relying on United States v. Halper, 490 U.S. 435 (1989), Dunnick maintained that the $15,000 penalty was punitive and further criminal prosecution for what Dunnick deemed the same conduct constituted multiple punishments prohibited by the double jeopardy clause. The district court denied Dunnick's motion to dismiss on September 14, 1990 and set a tentative trial date of October 31, 1990. Dunnick timely appeals. We review the district court's denial of an appellant's motion to dismiss on double jeopardy grounds de novo. United States v. Smith, 912 F.2d 322, 323 (9th Cir.1990).
 
 ANALYSIS
 A. Similarity of Offenses
 1. Count 1
 
 12
 Dunnick argues that Count 1, the federal assault charge against Inspector Rashid, was related to the same offense that was the basis for the civil penalty in custom case number 90250120454, "failure to complete inspection at the secondary inspection area." Dunnick relies on a recent Supreme Court decision, Grady v. Corbin, 110 S.Ct. 2084 (1990) for this contention.
 
 
 13
 In Grady v. Corbin, the Supreme Court held that the double jeopardy clause barred a prosecution for homicide after the defendant had previously pled guilty to two traffic offenses stemming from a single incident of drunk and reckless driving. In reaching its holding, the Court rejected the contention that the test of Blockburger v. United States, 284 U.S. 299 (1932)--which provides that cumulative penalties, and thus successive prosecutions, should not be barred if each offense charged requires proof of an element which the other does not--constituted the full extent of double jeopardy protection. Grady, 110 S.Ct. at 2090-92.
 
 
 14
 Rather, the Supreme Court held that a subsequent prosecution must do more than merely survive the Blockburger test. "As we suggested in [ Illinois v..] Vitale, [447 U.S. 410 (1980) ], the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." 110 S.Ct. at 2093. Thus, the defendant's guilty pleas to traffic tickets for driving while intoxicated and failing to keep to the right of the painted median barred his subsequent prosecution for homicide, as the government had admitted, in a bill of particulars, that it would rely on the same conduct in its homicide case to which the defendant had already pled guilty. See Grady, 110 S.Ct. at 2094.
 
 
 15
 Even under Grady's lenient standard, the double jeopardy clause seems to be inapplicable to the first count because that charge is related to a separate offense. Dunnick's alleged conduct for assault on a federal officer occurred after failing to submit for inspection by Inspector Palen, who was in the primary inspection area. Dunnick was not charged for assault on Inspector Palen, but on Inspector Rashid as he allegedly pursued appellant to San Ysidro Boulevard.
 
 
 16
 Moreover, the conduct alleged in the first civil penalty notice, failure to submit to secondary inspection, requires a failure to act. 19 U.S.C. § 1433. Assault on a federal officer, alleged in count 1 of the criminal indictment, involves an affirmative act; assaulting, resisting, opposing, impeding or interfering. 18 U.S.C. § 111. Accordingly, the assault charge and the failure to submit to secondary inspection do not appear to be related to the same offense as in Grady or to contain similar statuatory elements as in Blockburger. Therefore, based on the above, Dunnick's motion to dismiss count 1, the federal assault charge, was properly denied.
 
 2. Count 2
 
 17
 Dunnick argues that count 2, importing a stolen vehicle in violation of 18 U.S.C. § 553(a)(1) and (2), was related to the same conduct of "knowingly attempting to import a stolen self-propelled vehicle" claimed as the basis for the civil penalty in customs case number 90250120453 pursuant to 19 U.S.C. § 1627a(1)(A). This contention has merit.
 
 
 18
 At the hearing on the motion to dismiss the indictment on double jeopardy grounds, the government conceded that the conduct forming the basis of count 2 of the criminal indictment was the same conduct underlying the civil penalty in customs case number 90250120453. A review of the relevant statutes also supports this conclusion. Accordingly, the issue with respect to the second count of the indictment is whether the civil penalty for this count was punitive or remedial in nature under Halper and will be discussed below.
 
 B. Civil Penalties
 
 19
 Dunnick contends that the district court erred by finding that the civil penalties totalling $15,000 were remedial in nature and were not imposed as a punishment barring further criminal prosecution under Halper. As discussed above, we only need address this argument with regard to the second $10,000 civil penalty assessment and count 2 of the indictment.[1]
 
 
 20
 In Halper, the Supreme Court considered the question of "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy." 490 U.S. at 436. A unanimous Court held that a "civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." Id. at 448, (emphasis added). The double jeopardy clause, the Court went on to hold, prohibits the imposition of such a civil sanction "to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." Id. at 449. It is implicated when "... [t]he sanction [is] overwhelmingly disproportionate to the damages [the defendant] has caused." Id. As explained in Halper,
 
 
 21
 The Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis.
 
 
 22
 id. at 446.
 
 
 23
 The congressional purpose of 19 U.S.C. § 1627(a)(1)(A) is "to provide greater authority to require verification of vehicles at the border in order to assist in the interdiction of this illegal traffic." S.Rep. No. 308, 98th Cong., 2d Sess. 31, reprinted in 1984 U.S.Code Cong. & Admin.News 4910, 4940. "It is estimated that up to 200,000 stolen automobiles are exported annually." Id.
 
 
 24
 While it is difficult, if not impossible to ascertain the United States' actual loss due to the defendant's alleged violations, it is arguable that its losses would appear to include the ancillary costs of detection, investigation and prosecution, that routinely occur as a result of the United States' enforcement of § 1627(a)(1)(A). See Halper, 490 U.S. at 446. Here, the government appraised the value of the stolen car to be between 13 to 16 thousand dollars after it was sold and repaired. Thus, it is plausible that the $10,000 assessment could serve to reimburse the government for the difference of the value of the car before and after it was damaged, the actual costs of the man hours spent on repairing and selling the stolen vehicle, for repairing Inspector Rashid's allegedly damaged car and for covering any physical and/or mental damage incurred by the Customs officials while pursuing Dunnick in order to regain the stolen car.
 
 
 25
 The penalty assessments in this case do not appear to be so extreme and divorced from the United States' alleged expenses incurred in the investigation and prosecution of Dunnick's violations to constitute punishment, rather than the remedial goal of providing greater authority to United States Customs to require verification of vehicles at the border in order to assist in the interception of illegal traffic. Cf. Halper, 490 U.S. at 441 (where defendant was assessed a civil penalty of $130,000 for 65 violations of the False Claims Act). Furthermore, the fact that the Customs Service has granted Dunnick a chance to file a petition to mitigate his penalties, if submitted within thirty days of the termination of his criminal judicial action, cuts against Dunnick's arguments pertaining to the punitive nature of the civil penalties. Thus, the civil penalties in this case do not appear to violate the Halper rule for the rare case, "where a fixed-penalty provision subjects a prolific but small-guage offender to a sanction overwhelmingly disproportionate to the damages he has caused." Id. at 449. Accordingly, the district court's order denying Dunnick's motion to dismiss the indictment is affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government first asserts that Halper does not apply to this case and that the double jeopardy clause is not implicated because the criminal proceedings follow a civil penalty that is remedial in nature. Cf. Halper, 490 U.S. at 451, n. 10 (indicating "[t]hat the Government seeks the civil penalty in a second proceeding is critical in triggering the protections of the Double Jeopardy Clause"). We conclude that this distinction is not significant and that the question is still whether the civil assessments are remedial in nature. See United States v. Bizzell, 921 F.2d 263, 267 (10th Cir.1990) (where court reached same conclusion)